OPINION
Plaintiff-appellant, Mark J. Klontz, appeals from a decision of the Common Pleas Court of Madison County, which granted summary judgment in favor of defendants-appellees, city of London, Stephen L. Hume, and David G. Eades, with respect to Klontz's wrongful discharge claim.
In March 1997, Mark Klontz was hired by the city of London to be its building, electrical, and zoning inspector. Klontz's immediate supervisor was Elmer Olsen, who was London's safety service director. Olsen was succeeded as the city's safety service director by Stephen Hume in January 1999.
In September 1997, Klontz sent London's mayor, David Eades, a notice ordering him to remove two junked vehicles from his property. Klontz sent Eades the notice after obtaining the approval of Hume, who, at the time, was London's law director.
During Klontz's tenure with the city, Mayor Eades and other city officials received a number of complaints from citizens and builders about Klontz's demeanor and job performance. Several of the complaints were made by females who alleged that Klontz had made inappropriate sexual remarks to them.
On June 1, 1999, Mayor Eades sent Klontz a memorandum informing him of his intention to relieve Klontz of his zoning inspection duties and reduce his pay correspondingly on the grounds that Klontz was not adequately performing those duties. Later that same day, the city's law director informed Eades that he could reduce Klontz's duties and pay without the city council's approval. However, those changes never went into effect.
On June 3, 1999, Klontz was asked to inspect an electrical socket that monitors the amount of electricity used for a street lighting panel. The project was being supervised by U.S. Utilities. When Klontz arrived at the project site, Klontz told U.S. Utilities workers, Jason Dorn and Don Taylor, that he was not qualified to inspect the socket. After Klontz shouted obscenities at them, Dorn and Taylor contacted London's street superintendent, Robert Virts, informing him that Klontz was upset at having been asked to approve or "sign off" on the project. Virts promptly came to the work site, where he encountered Klontz, who cursed at Virts and the U.S. Utilities workers, "using the `f' word and everything else." According to Virts, Klontz was abusive, belligerent, profane, and "out of control." When Klontz refused to sign off on the work, Virts did so in his capacity as the city's street superintendent, over Klontz's objection that he (Virts) was not qualified to sign off on the project. Virts reported Klontz's behavior to Hume. Klontz sent Hume a letter, stating that he had "no jurisdiction" over the street lighting project, and that he had confirmed this fact with an official from the state Board of Building Standards.
At that evening's city council meeting, Mayor Eades proposed relieving Klontz of his zoning inspection duties. Hume told council members of Klontz's actions earlier that day at the street lighting project. After several council members noted they had received complaints from their constituents about Klontz's behavior, the council unanimously ordered Hume to terminate Klontz's employment with the city, altogether. Hume fired Klontz the next day.
Klontz brought a wrongful discharge action against the city, Mayor Eades, and Hume, alleging that he was wrongfully terminated from his position for refusing to approve the street lighting project. Klontz later amended his complaint to add a claim alleging that his discharge violated his first amendment rights. This claim arose from the letter Klontz sent to Hume on June 3, 1999, stating he lacked jurisdiction over the street lighting project. The city, Eades, and Hume moved for summary judgment on all of Klontz's causes of action, and Klontz filed a response. The trial court summary judgment to the city, Eades, and Hume.
Klontz appeals, raising the following assignments of error, which we shall address in an order that facilitates our analysis.
Assignment of Error No. 2:
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN GRANTING THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BY FINDING THAT THE PLAINTIFF'S DISCHARGE DID NOT VIOLATE PUBLIC POLICY, AND THEREFORE DID NOT CONSTITUTE AN EXCEPTION TO THE DOCTRINE OF EMPLOYMENT AT WILL.
Pursuant to Civ.R. 56, a trial court should grant summary judgment only when there are no genuine issues of material fact remaining to be litigated, the moving party is entitled to judgment as a matter of law, and it appears from the evidence, which is to be viewed in a light most favorable to the nonmoving party, that reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party.Welco Industries, Inc. v. Applied Cos. (1993), 67 Ohio St.3d 344, 346, citing Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
Klontz asserts that the city discharged him for refusing to approve a street lighting project over which he lacked jurisdiction, and which would have violated provisions of the Ohio Administrative Code and the National Electric Code. Klontz argues that a clear public policy exists against discharging an employee on these grounds, and, therefore, the trial court erred by awarding appellees summary judgment on this issue.
"Unless otherwise agreed, either party to an oral employment-at-will agreement may terminate the employment relationship for any reason which is not contrary to law." Mers v. Dispatch Printing Co. (1985),19 Ohio St.3d 100, paragraph one of the syllabus. An exception to the employment-at-will doctrine exists where the employee's discharge violates a clear public policy. Painter v. Graley (1994),70 Ohio St.3d 377. "Clear public policy" can be discerned from a number of sources, including the United States and Ohio Constitutions, federal and Ohio statutes, administrative rules and regulations, and the common law. See id., paragraph three of the syllabus, and Kulch v. StructuralFibers, Inc. (1997), 78 Ohio St.3d 134, 152 (finding that public policy could be discerned from federal as well as Ohio statutes). "[A]n exception to the traditional doctrine of employment-at-will should be recognized only where the public policy alleged to have been violated is of equally serious import as the violation of a statute." Painter at 384, citing Greeley v. Miami Valley Maintenance Contrs., Inc. (1990),49 Ohio St.3d 228, 234. The question of whether the "alleged grounds for a discharge, if true, violate a `clear public policy'" is to be determined as a matter of law. Painter at 384; and Collins v. Rizkana
(1995), 73 Ohio St.3d 65, 70.
To support his contention that a material issue of fact exists as to whether his discharge violated a clear public policy, Klontz cites Ohio Adm. Code 4101:2-1-05, which states that the purpose of Ohio's Basic Building Code, contained in Ohio Adm. Code 4101:2-1 to 4101:2-69, is "[t]o provide uniform standards * * * [which] shall relate to the conservation of energy, safety, and sanitation of buildings[.]" Klontz also cites Article 90-1 of the National Electric Code, which states that its purpose is "the practical safeguarding of persons and property from hazards arising from the use of electricity[,]" and further adds that "[t]his code contains provisions considered necessary for safety." Klontz asserts that these provisions were sufficient to establish that his discharge for allegedly refusing to sign off on the street lighting project on the grounds that he lacked jurisdiction to do so under the building and electric codes violated a clear public policy. We disagree with this argument.
While Klontz cited the "purpose" provisions of Ohio's Building Code and National Electric Code, which stated the codes were promulgated to protect public safety, he failed to specify the provisions of those codes that would have been violated had he signed off on the project. The only indication we have of what those provisions are is contained in Klontz's June 3, 1999 letter to Hume, which stated as follows:
 I recommend the city request a letter for [sic] the companies [sic] Electric Safety Inspector that all wiring methods and installation currently meet the national electric codes. The inspections were the responsibility of the company.
 According to the Board of Building Standards Mr. Steve Ragoli [sic, Rigosi], I have no jurisdiction over this project. I can verify the wiring method in the meter sockets. I cannot guarantee the safety of the projects [sic] wiring. According to the Board of Building Standards, the service would need to be released by the ESI over the project.
 At the time the companies [sic] ESI releases the service, I would be happy to forward the release to Ohio Edison.
Klontz's letter indicates that some provision of either the Ohio Basic Building Code or the National Electric Code requires that the electrical safety inspector of the company that works on a project verify that the project's electrical wiring comply with the standards of the National Electric Code. Klontz asserted that it was the responsibility of U.S. Utilities' electrical safety inspector, and not his, to verify that the wiring methods used in the street lighting project complied with the National Electric Code. However, without knowing the specific provisions of the codes that Klontz would have violated had he approved of the project, it is impossible to determine if Klontz's refusal amounted to anything more than Klontz's desire to "engag[e] in another inspection `by the book'[,]" as Klontz himself characterizes it. We are unable to assess whether discharging an employee for refusing to sign off on a project that would violate unspecified provisions of Ohio's Basic Building Code or the National Electric Code violates a clear public policy of this state, which is of equally serious import as the violation of a statute.Painter, 70 Ohio St.3d at 384. Accordingly, the trial court did not err in determining as a matter of law that Klontz's discharge did not violate a clear public policy.
Klontz's second assignment of error is overruled.
Assignment of Error No. 3:
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DETERMINING THAT THE PLAINTIFF'S DISCHARGE WAS NOT RETALIATORY.
Klontz argues that the trial court erred in rendering summary judgment against him on his claim that he was wrongfully discharged in retaliation for refusing to approve the street lighting project, because his refusal to do so constituted "protected conduct."
In support of this argument, Klontz states that the elements of a retaliatory discharge claim are: (1) the employee engaged in protected conduct; (2) the employer is aware of the protected conduct, (3) an adverse action has been taken against the employee; and (4) a causal connection exists between the employee's engaging in the protected conduct, and the adverse action. However, these elements apply to retaliatory discharge claims brought pursuant to federal or Ohio statutes, which "prohibit an employer from retaliating against an employee who makes a complaint or files a charge against the employer with a governmental agency[,]" or "who `oppose[s]' any unlawful practice under the statute." Siegel Stephen, Ohio Employment Practices Law (2001 Ed.), 432-433, Section 16.29. Klontz did not bring his retaliatory discharge claim pursuant to any such federal or state statute. Klontz's claim should have been, and in fact was, brought as a claim for wrongful discharge in violation of public policy; however, his public policy claim fails for the reasons we cited in response to Klontz's second assignment of error.
Klontz further argues that the "pattern of retaliation" against him began when he cited Mayor Eades for having junk vehicles on his property in violation of the city's zoning code, and continued throughout his tenure. During oral arguments, Klontz asserted that this pattern of retaliation constituted a second basis for his retaliatory discharge claim.
In his amended complaint, Klontz alleged that enforcing the city's zoning and building codes constituted "protected conduct." Furthermore, Klontz presented evidence of this alleged pattern of retaliation in the "Factual Overview" section of his response to appellees' motion for summary judgment. However, he did not cite this alleged pattern of retaliation as a basis for his retaliatory discharge claim in his response to appellees' motion for summary judgment. Nor, for that matter, did he cite any state or federal statute pursuant to which he was bringing his claim. Instead, the only basis he cited in support of his retaliatory discharge claim in his response to appellees' summary judgment motion was his refusal to approve the street lighting project. It is well-settled that a party waives the right to contest an issue on appeal if he has failed to raise it at the appropriate time in the trial court. Van Camp v. Riley (1984), 16 Ohio App.3d 457, 463.
Klontz's third assignment of error is overruled.
Assignment of Error No. 1:
 THE TRIAL COURT'S OPINION REFLECTS AN IMPROPER APPLICATION OF THE APPROPRIATE STANDARDS FOR DETERMINING A MOTION FOR SUMMARY JUDGMENT RESULTING IN PREJUDICE TO THE PLAINTIFF.
Klontz argues that the trial court misapplied the standards for determining summary judgment motions contained in Civ.R. 56(C) by finding immaterial certain factual disputes between the parties concerning the reasons for his discharge, and by failing to construe the evidence in a light most favorable to him as the nonmoving party.
The trial court noted there were a number of factual disputes between the parties regarding whether Klontz had engaged in sexual harassment, had been abusive to persons at the street lighting project, or had been abusive to the public in general. However, the trial court found these factual disputes immaterial. Klontz argues that these factual disputesdo give rise to genuine issues of material fact, because the allegations from which they arose were used to justify his dismissal. We disagree with Klontz's argument.
"Material issues of fact" are those that might affect the outcome of the action pursuant to the substantive law that governs the case. Turnerv. Turner (1993), 67 Ohio St.3d 337, 340, citing Anderson v. LibertyLobby, Inc. (1986), 477 U.S. 242, 248. The substantive law that governs this case includes the employment-at-will doctrine. Under that doctrine, an employer can discharge an employee at any time, and for any reason or no reason at all, so long as the discharge is not contrary to law. Chapman v. Adia Services, Inc. (1997), 116 Ohio App.3d 534, 541.
Klontz failed to demonstrate that an exception to the employment-at-will doctrine applied under the facts of this case. Consequently, it was immaterial whether Klontz actually engaged in sexual harassment, or was abusive at the street lighting project or to the public in general, because the city had the right to discharge him for any reason or no reason at all. Chapman at 541.
Klontz also argues that the trial court failed to construe the evidence presented in a light most favorable to him. However, the only instance where the trial court failed to do so was in relation to Klontz's first amendment claim, which arose from his June 3, 1999 letter to Hume.
A public employee cannot be discharged for speaking on matters of public concern, unless the employee's interest in commenting upon matters of public concern is outweighed by the employer's interest in promoting the efficiency of the public services it performs through its employees.Pickering v. Bd. of Education (1968), 391 U.S. 563, 568, 88 S.Ct. 1731,1734.
The trial court awarded summary judgment to appellees on this claim apparently on the basis of the balancing test in Pickering, finding that Klontz's "historical conduct and that of June 3, 1999" demonstrated that any free speech interest Klontz had was outweighed by the city's interest in promoting the efficiency of the public services it performs through its employees. However, Klontz raised sufficient evidence to create issues of fact concerning whether he was abrasive in his dealings with the public in general, and whether he was as abrasive with persons at the street lighting project as appellees' witnesses claimed.
Nevertheless, "a reviewing court is not authorized to reverse a correct judgment merely because erroneous reasons were assigned as a basis thereof." State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn. (1994), 69 Ohio St.3d 217, 222. Here, the trial court should have awarded appellees summary judgment on the grounds that Klontz's speech involved a matter of private, rather than public, concern.
"Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Connick v. Myers (1983), 461 U.S. 138,147-148, 103 S.Ct. 1684, 1690. When an employee speaks on matters that are only of personal interest to him, as opposed to matters of public concern, a court is not the appropriate forum to review the wisdom of any personnel decision affecting him. Id. at 147, 103 S.Ct. at 1690.
When read in context, it is clear that Klontz's letter involves matters of personal interest to him, rather than matters of public concern. Essentially, Klontz was attempting to justify his refusal to perform an assigned task by telling his supervisor that it was not his responsibility to verify that the wiring methods used in the project conformed to the National Electric Code, but instead, was the responsibility of U.S. Utilities' electrical safety inspector. Klontz did not inform Hume that public safety would be seriously undermined if he, acting as the city's electrical inspector, were to approve the project, rather than U.S. Utilities' electrical safety inspector; instead, he merely informed Hume that it was not within his "jurisdiction" to guarantee the project's safety.
Finally, Klontz argues that the trial court failed to construe the evidence in a light most favorable to him when it erroneously found he had not claimed he was entitled to progressive discipline as provided for in the city's personnel handbook.
In fact, Klontz did state in his response to appellees' motion for summary judgment that the city had discharged him without following the progressive discipline provisions outlined in the city's personnel handbook. However, Klontz's sole purpose in citing this fact was to demonstrate that a material issue of fact existed as to whether the city had a justifiable cause to discharge him on the grounds of his allegedly abusive behavior to the public. As we have explained, the only instance where the trial court used appellees' argument that he had been abusive to the public was with respect to Klontz's first amendment claim. We have upheld the trial court's ruling on that claim on other grounds. Furthermore, because Klontz was an at-will employee, the city had the right to terminate Klontz for any reason or no reason at all, irrespective of whether he actually had been abusive to the public. Therefore, any error the trial court committed by finding that Klontz had not claimed he was entitled to progressive discipline was harmless.
Klontz's first assignment of error is overruled.
The trial court's judgment is affirmed.
WALSH, P.J., and POWELL, J., concur.